# NO. 12-22-00067-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *OLIVER LOUDD,*<br>*APPELLANT* | *§* | *APPEAL FROM THE 114TH* |
| *V.* | *§* | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | *§* | *SMITH COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Oliver Loudd appeals his conviction for aggravated assault with a deadly weapon. In one issue, Appellant argues that the trial court abused its discretion by not holding a formal competency hearing. We affirm.

### BACKGROUND

Appellant was charged by indictment with aggravated assault with a deadly weapon. The indictment further alleged that Appellant previously was convicted of aggravated robbery with a deadly weapon. Appellant pleaded "not guilty."

During pretrial proceedings, Appellant's trial counsel raised issues to the trial court she believed were related to Appellant's competency to stand trial. After conducting an informal inquiry into the matter, the trial court determined that holding a formal competency hearing was not required.

The matter proceeded to a jury trial. Following the presentation of evidence and argument of counsel, the jury found Appellant "guilty" as charged. At the conclusion of a trial on punishment, the jury assessed Appellant's punishment at imprisonment for sixty years. The trial court sentenced Appellant accordingly, and this appeal followed.

In his sole issue, Appellant argues that the trial court abused its discretion in declining to conduct a formal competency hearing after his trial counsel brought the issue of his competency to the trial court's attention.

## Standard of Review and Governing Law

We review a trial court's failure to conduct a competency inquiry for an abuse of discretion. *Kostura v. State*, 292 S.W.3d 744, 746 (Tex. App.–Houston [14th Dist.] 2009, no pet.); *Lahood v. State*, 171 S.W.3d 613, 617–18 (Tex. App.–Houston [14th Dist.] 2005, pet. ref'd); *see also Moore v. State*, 999 S.W.2d 385, 393 (Tex. Crim. App. 1999). A defendant is presumed competent to stand trial and remains so unless proved incompetent by a preponderance of the evidence. TEX. CODE CRIM. PROC. ANN. art. 46B.003(b) (West 2018). A defendant is not competent to stand trial if he lacks (1) a sufficient present ability to consult with his attorney with a reasonable degree of rational understanding or (2) a rational as well as factual understanding of the proceedings against him. *Id.* art. 46B.003(a). At any time before sentence is pronounced, a defendant's competency to stand trial may be raised "by either party or by the trial judge." *Hobbs v. State*, 359 S.W.3d 919, 924 (Tex. App.–Houston [14th Dist.] 2012, no pet.). If evidence which raises a bona fide doubt as to the defendant's competence to stand trial comes to the trial court's attention, the trial court shall "suggest that the defendant may be incompetent to stand trial" and then, "determine by informal inquiry whether there is some evidence from any source that would support a finding that the defendant may be incompetent to stand trial." TEX. CODE CRIM. PROC. ANN. art. 46B.004 (West 2018); *see Fuller v. State*, 253 S.W.3d 220, 228 (Tex. Crim. App. 2008). A bona fide doubt is "a real doubt in the judge's mind as to the defendant's competency." *Alcott v. State*, 51 S.W.3d 596, 599 n.10 (Tex. Crim. App. 2001). Evidence raising a bona fide doubt "need not be sufficient to support a finding of incompetence and is qualitatively different from such evidence." *Id.* Evidence is usually sufficient to create a bona fide doubt if it shows "recent severe mental illness, at least moderate retardation, or truly bizarre acts by the defendant." *McDaniel v. State*, 98 S.W.3d 704, 710 (Tex. Crim. App. 2003); *see Kostura*, 292 S.W.3d at 747.

**<u>Discussion</u>**

In the instant case, during a pretrial hearing conducted prior to the commencement of jury selection, the following exchange took place between Appellant's trial counsel, the trial court, and Appellant:

[APPELLANT'S COUNSEL]: When we had an opportunity to have a reset [sic], I met with the defendant's father, in which the father asked me -- he just saw some strange activity from Mr. Loudd. The father informed me that Mr. Loudd has a mental problem. And so I asked Mr. Loudd, when he was incarcerated in TDCJ, was he found to be -- was he on mental medication, and he told me yes. This is the first time I have started noticing all of this that was going on this morning. Somewhat made me question it. I have been going back and forth visiting with Mr. Loudd. And to be honest with you, initially when I had started visiting with him, I had a lot of problems, but I never did think it was mental. I sent my investigator over, she visited with him, and we were able to show him his discovery. Afterwards, I started going back visiting with him. But there's something strange here, that I failed to do a mental evaluation on Mr. Loudd. And now his father is stating he has a mental condition, something I was unaware of. For the record, not only did I communicate with Mr. Loudd, but I communicated with his father. And at no time did his father ever tell me about a mental condition until today. And I just don't want to proceed with this knowing -- it may come back saying that he is competent. But at the same time, I need a medical examination to say everything is clear for us to go forward.

THE COURT: What -- what is the nature of the mental health diagnosis?

[APPELLANT'S COUNSEL]: What is the --

THE COURT: Does he have a diagnosis?

[APPELLANT'S COUNSEL]: What's your diagnosis?

[APPELLANT]: Manic depression, bipolar, sleep insomnia.

[APPELLANT'S COUNSEL]: Manic depressive, bipolar. What else?

[APPELLANT]: Sleep insomnia.

[APPELLANT'S COUNSEL]: Sleep insomnia. Have you been taking medication since you've been in Smith County Jail?

. . . .

[APPELLANT]: Yes, ma'am.

[APPELLANT'S COUNSEL]: And when did you start taking medication?

[APPELLANT]: When I got in there. But they stopped it because I didn't want to pay $10.

[APPELLANT'S COUNSEL]: So you stopped medication because you didn't want to pay $10?

[APPELLANT]: Not -- the lady, the psyche lady.

3

[APPELLANT'S COUNSEL]: The psyche lady, you had to pay her $10?

[APPELLANT]: Uh-huh. And I -- and I refused (inaudible).

. . . .

[APPELLANT]: I said I refused. I signed a refusal of paying, so she didn't -- she didn't continue them. She just stopped them.

THE COURT: What medication were you taking?

[APPELLANT]: I was taking -- and now I'm taking Cogentic (spelled phonetically) -- Cogentix (spelled phonetically).

THE COURT: What was it for?

[APPELLANT]: Sleep insomnia.

THE COURT: Okay. So is insomnia the -- the problem? Is that what was -- has been causing you issues?

[APPELLANT]: I don't --

[APPELLANT'S COUNSEL]: Were you taking bipolar medicine?

[APPELLANT]: In the world, but I stopped because I didn't never go to Malena (spelled phonetically). I never went to Malena, so I was just -- just stopped.

[APPELLANT'S COUNSEL]: There's just been some weird reactions today. And when the father noticed that as well, I said, I prefer having him evaluated to say he's competent and wants to move forward. I don't want anything to be reversible behind this once they bring it to our attention.

In his brief, Appellant argues that when his attorney told the trial court about (1) his behavior, particularly his interactions with her relating to discovery, (2) his previous diagnosis of bipolar disorder, which currently is untreated, and (3) his father's concern about his behavior, the court should have developed a bona fide doubt as to his competency. Thus, Appellant contends that the trial court abused its discretion by failing to conduct a formal competency hearing.

During the pretrial hearing, Appellant's counsel elaborated on two instances wherein she and Appellant discussed discovery. According to his attorney, the first interaction occurred after Appellant's counsel first received discovery in May 2021. During her meeting with Appellant, he became confrontational and said, "I'm going to tell my dad on you." Appellant's counsel said she resolved the matter by sending in her investigator to show Appellant the discovery and, when Appellant calmed down, she was able to review the discovery with him. The second instance took place at the pretrial hearing when Appellant accused his attorney of not having shown him

any of the discovery. This second occurrence, combined with Appellant's father's conveying to her that Appellant's behavior was "bizarre" to him, prompted Appellant's counsel to raise the matter of Appellant's competency to the trial court.

We first note that the May 2021 incident occurred approximately nine months prior to Appellant's February 22, 2022 trial date. Thus, despite Appellant's having been diagnosed with a mental illness and assuming his behavior was, in fact, symptomatic of such illness, the behavior was not recent. *See, e.g.*, ***Thompson v. State***, 915 S.W.2d 897, 902 (Tex. App.– Houston [1st Dist.] 1996, pet. ref'd) (holding that depression and suicide attempts more than nine months prior to trial did not amount to recent severe mental illness and did not trigger competency inquiry).

Further still, Appellant's history of mental illness and recent behavior at the pretrial hearing only would mandate a competency inquiry if there was evidence raising a bona fide doubt as to Appellant's present ability to communicate or understand the proceedings. *See* ***Kostura***, 292 S.W.3d at 747. At the hearing, Appellant's attorney related to the trial court Appellant's recent interaction with her regarding his claim that she had not reviewed discovery materials with him, along with Appellant's father's concern about his son's behavior. But at no point did Appellant's counsel note any inability she had communicating with Appellant, and there is no indication in the record that Appellant's behavior or comprehension during trial were abnormal. *See id.*; ***Thompson***, 915 S.W.2d at 902. To the contrary, Appellant's counsel told the trial court that her announcement of "ready" was conditioned on her belief that she and Appellant sufficiently were prepared for trial. She elaborated, stating that she discussed Appellant's defenses with him, answered questions about every defense about which he inquired, and engaged in conversations with Appellant about having the jury assess his punishment and whether he would testify at trial.

Based on the foregoing, we cannot conclude that Appellant's statements to his attorney about whether he previously reviewed discovery are "truly bizarre" or otherwise indicative that Appellant (1) lacked a sufficient present ability to consult with his attorney with a reasonable degree of rational understanding or (2) lacked a rational and factual understanding of the proceedings against him, so as to trigger the trial court's duty to conduct a formal competency hearing. *See* TEX. CODE CRIM. PROC. ANN. art. 46B.003(a); ***Kostura***, 292 S.W.3d at 747.

5

Therefore, we hold that the trial court did not abuse its discretion by declining to conduct a formal competency hearing. Appellant's sole issue is overruled.

**DISPOSITION**

Having overruled Appellant's sole issue, we **_affirm_** the trial court's judgment.

**GREG NEELEY**
Justice

Opinion delivered December 7, 2022.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**DECEMBER 7, 2022**

**NO. 12-22-00067-CR**

**OLIVER LOUDD,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 114th District Court

of Smith County, Texas (Tr.Ct.No. 114-0568-21)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*